FILED - USDC -NH
2025 DEC 10 PM12:17

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 25-cr-31-LM-04 |
| | ) | |
| RYAN STOUDT | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Erin Creegan, United States Attorney for the District of New Hampshire, and the defendant, Ryan Stoudt, and the defendant's attorneys, Barak Cohen, S. Amy Spencer, and David Vicinanzo, Esquires, enter into the following Plea Agreement:

1. <u>The Plea and the Offense</u>.

The defendant agrees to plead guilty to Count 1 of the Indictment that charges him with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1349, 1343.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2. <u>The Statute and Elements of the Offense</u>.

Title 18, United States Code, Section 1349 provides, in pertinent part:

> Any person who . . . conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy.

18 U.S.C. § 1349.

The defendant understands that the offense of conspiracy has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

<u>First</u>, that the agreement specified in the indictment, and not some other agreement or

agreements, existed between at least two people to commit wire fraud; and

Second, that the defendant willfully joined in that agreement.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2023 Revisions,* Instructions 4.18.1349 and 4.18.371(1), available at http://www.med.uscourts.gov/pdf/crpjilinks.pdf.

The underlying substantive offense of wire fraud, Title 18, United States Code, Section

1343 provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writing signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

First, that there was a scheme, substantially as charged in the indictment, to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

Second, that the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter;

Third, that the defendant knowingly and willfully participated in this scheme with the intent to defraud; and

Fourth, that for the purpose of executing the scheme or in furtherance of the scheme, the defendant caused an interstate wire communication to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, an interstate wire communication would be used, on or about the date alleged.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2023 Revisions,* Instruction 4.18.1343, available at http://www.med.uscourts.gov/pdf/crpjilinks.pdf.

- 2 -

3. <u>Offense Conduct.</u>

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

Slice MR was a market research firm incorporated in Texas with its principal office in Illinois.

Op4G was a market research firm with its principal office in New Hampshire. Op4G was established in 2010 and closed in or about 2022.

The defendant was a resident of Texas. He was the Chief Revenue Officer of Slice. He was formerly a Senior Director, Assistant Vice President, and Vice President of Sales at Op4G.

Both Slice and Op4G maintained "panels" of persons potentially eligible to take surveys. Clients would hire Slice and Op4G to conduct market research surveys. Slice and Op4G then solicited their panel members to take the surveys. Eligible persons who completed surveys would be paid a nominal amount for their time. Slice and Op4G would collect and transmit the data to clients.

Slice and Op4G clients sometimes had safeguards in place to ensure that fraudulent data was not included in survey results. For example, clients would throw out surveys that were completed too quickly or repeatedly done from the same Internet protocol (IP) address. Clients also frequently had screener questions in place to ensure that only persons in their target demographic groups would be included in the data set.

In or around 2014, co-conspirators Frank Hayden, Frank Nappo, and Daniel Harriman agreed to fabricate survey data to increase Op4G revenues. The conspirators used the term "trade" to refer to the fabricated survey data. Shortly after, the defendant and co-conspirators

Archie Ignacio, Katarina Grubljesic, and Strahinja Grubljesic joined in and participated in the scheme to generate "trade."

The conspirators recruited other Op4G employees, family members, and friends to take market research surveys repeatedly while purporting to be legitimate survey participants. The conspirators referred to the illegitimate survey takers as "ants" and referred to the "ants" collectively as the "ant farm." Most of the conspirators, including the defendant, also participated in the "ant farm." Op4G and later Slice paid ants for each fraudulent survey taken. The "ants" were assigned unique ID numbers to track their progress.

The "ants" were physically located throughout the United States and in other countries, including but not limited to Serbia, India, and Brazil.

The conspirators, including the defendant, regularly exchanged emails coordinating and discussing "ant farm" work. In these emails, the conspirators gave instructions on how to answer screener questions and circumvent safeguards designed to filter out fraudulent data. For example, on March 17, 2020, the defendant emailed Hayden, Katarina Grubljesic, Katarina Grubljesic's husband Branko Savic, and Strahinja Grubljesic the following:

> Hi Team,
>
> We are soft launching this one. No OEs [open-ended questions].
> I tested it out and it's less than a 5 min study probably closer to about 2-3 min. Just now soft launching for 50 completes.
>
> Target: Audience is adults diagnosed with psoriasis or psoriatic arthritis and who are on biologic medication[.]
>
> Payout: $6
>
> Estimated LOI: 5 minutes
> Estimated Launch: 3/17/2020
> Open-ends: 0
> Completes: 10000
> Quotas:

      a.  Received Rx, took biologic but discontinued
      b.  Received Rx, and are currently taking
      c.  Received Rx, never took biologic, tried to fill
      d.  Received Rx, never took biologic, did not try to fill

Please note – Quotas are based on the response, not the respondent

Sometimes the conspirators would mix "trade" or "ant farm" data with legitimate survey data. The conspirators referred to this as "scrambling the eggs."

The conspirators also exchanged Excel spreadsheets for surveys containing multiple tabs, one for each "ant." Each tab contained unique links to allow the ants to take each survey repeatedly.

In or around 2018, co-conspirators Hayden, Nappo, and others decided to begin transitioning the fraudulent survey-taking operation away from Op4G. The new operation became Slice. Several conspirators, including the defendant, moved from Op4G to Slice.

Emails, data, and invoices recovered from Op4G and Slice indicate that the conspirators used "trade" or "ant farm" work to help generate approximately 90% of their revenues over the last six years. Between 2014 and the beginning of 2025 Op4G and Slice billed over $10 million to clients for work tainted by "trade" or "ant farm" work.

4. <u>Penalties, Special Assessment and Restitution</u>.

The defendant understands that the penalties for the offense are:

A.     A maximum prison term of 20 years (18 U.S.C. §§ 1349, 1343);

B.     A maximum fine of $250,000 or twice the gross gain or loss, whichever is greater (18 U.S.C. § 3571(b)(3) or (d));

C.     A term of supervised release of a term of supervised release of not more than 3 years (18 U.S.C. §§ 3559(a)(3); 3583(b)(2)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised

release; and

D.    A mandatory special assessment of $100, $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)); and

E.    In addition to the other penalties provided by law, the Court may order the defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

To facilitate the payment and collection of any restitution that may be ordered, the defendant agrees that, upon request, he will provide the United States with a financial disclosure statement and supporting financial documentation.

The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full, including, but not limited to, the Treasury Offset Program.

5.    <u>Sentencing and Application of the Sentencing Guidelines.</u>

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.    Respond to questions from the Court;

C.    Correct any inaccuracies in the pre-sentence report;

D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address

the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

(a)    The United States will recommend that the defendant be sentenced at the bottom of the applicable advisory sentencing guidelines range as determined by the Court;

(b)    For purposes of Guidelines calculation, the loss amount is between $9.5 million and $25 million (U.S.S.G. § 2B1.1(b)(1)(K)); and

(c)    The defendant is jointly and severally liable for at least $9.5 million in restitution in an amount to be determined by the Court.

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the Court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to

the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B. Challenges the United States' offer of proof at any time after the plea is entered;

C. Denies involvement in the offense;

D. Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E. Fails to give complete and accurate information about his financial status to the Probation Office;

F. Obstructs or attempts to obstruct justice, prior to sentencing;

G. Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H. Fails to appear in court as required;

I. After signing this Plea Agreement, engages in additional criminal conduct; or

J.       Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.       To plead not guilty or to maintain that plea if it has already been made;

B.       To be tried by a jury and, at that trial, to the assistance of counsel;

C.       To confront and cross-examine witnesses;

D.       Not to be compelled to provide testimony that may incriminate him; and

E.       To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to

a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.  Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.    Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10.  Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.  Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated

guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12. Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will

have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

13.  <u>Waivers.</u>

A.  Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.  His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.  The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.  Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.      His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.      The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.  <u>No Other Promises</u>.

- 13 -

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

ERIN CREEGAN
United States Attorney

Date: 12/10/25

By:_____

Alexander S. Chen
Assistant United States Attorney
MA Bar Association #698458
53 Pleasant St., 4th Floor
Concord, NH 03301
alexander.chen@usdoj.gov

- 14 -

The defendant, Ryan Stoudt, certifies that he has read this 15-page Plea Agreement and that he fully understands and accepts its terms.

Date: __12/09/2025__

_____
Ryan Stoudt, Defendant

I have read and explained this 15-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: __12/09/2025__

_____
Barak Cohen, Esquire
Perkins Coie LLP

S. Amy Spencer, Esquire
David Vicinanzo, Esquire
Nixon Peabody, LLP

Attorneys for Ryan Stoudt

- 15 -